UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                    :

YI FU CHEN,                            :

                           Plaintiff,    :

                                      :

               -v-                :

SPRING TAILOR, L.L.C., et al.,      :

                                      :

                         Defendants.   :

                                      :
------------------------------------------------------------------X

14 Civ. 218 (PAE)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/29/15

PAUL A. ENGELMAYER, District Judge:

     This personal-injury case arises out of a six-vehicle collision in the Lincoln Tunnel that occurred on July 19, 2013.  Plaintiff Yi Fu Chen, a Chinese citizen, was a passenger in the sixth and rear car.  He sues that car's driver, Weilei Ge; Ge's employer, Spring Tailor, L.L.C. ("Spring Tailor"); and the car's owner, Xi Jun Zhou.  He also sues five other defendants, each of whom was either the driver or owner of the three vehicles immediately in front of him.

     Before the Court are two motions for summary judgment.  First, the five defendants associated with the third through fifth vehicles—Johnaton Marin-Reyes, Joscelin Bellestros, Israel Alverado, Domestic Linen Supply, Inc. ("Domestic Linen"), and Rolando Rivera (together, the "Ahead Car Defendants" or, as they have described themselves, the "Collective Defendants")—argue that, as a matter of law, Ge, as the driver of the rear car, was the only party liable for the collision.  Second, Spring Tailor argues that Ge, although Spring Tailor's sole owner, was acting outside the scope of his employment with Spring Tailor at the time of the accident.  For the reasons that follow, the Court denies both motions.

I.      **Background**[1]

   A.      **Factual Background**

In July 2013, Chen was the owner, chairman, and president of Xin Fu Zhen Huang

Company, a textile manufacturing company based in Fujian, China.  Ahead Car Defs. 56.1, Ex.

D ("Chen Dep."), at 17–18.  That month, Chen came to New York to meet potential American

clients at an industry convention in the Jacob Javits Convention Center.  *Id.* at 29–31.  To

register and attend the convention as an exhibitor, Chen used the services of the Fumao

Company ("Fumao").  *Id.* at 32–33.  Fumao assisted him in coordinating his convention

---

[1] The Court's account of the facts is derived from the parties' submissions in support of and in opposition to the instant motions, including the statement of material facts by the Collective Defendants (Dkt. 101) ("Ahead Car Defs. 56.1"), and the exhibits attached thereto; the Declaration of R. Diego Velazquez in support of the Collective Defendants' motion for summary judgment (Dkt. 103) ("Velazquez Decl."); the Declaration of Stuart Bernstein in support of the Collective Defendants' motion for summary judgment (Dkt. 104) ("Bernstein Decl."); the Affirmation of Terrance J. Ingrao in support of Spring Tailor's motion for summary judgment (Dkt. 106) ("Ingrao Aff."), and the exhibits attached thereto; the statement of material facts by Spring Tailor (Dkt. 108) ("Spring Tailor 56.1"); the Declaration of Vincent A. Brescia in support of the Collective Defendants' motion for summary judgment (Dkt. 109) ("Brescia Decl."); Chen's response to Spring Tailor's 56.1 statement (Dkt. 112) ("Chen Resp. Spring Tailor 56.1"), and the exhibits attached thereto; Chen's response to the Collective Defendants' 56.1 statement (Dkt. 114) ("Chen Resp. Ahead Car Defs. 56.1"), and the exhibits attached thereto; the Declaration of Thomas G. Bernard in opposition to the Collective Defendants' motion for summary judgment (Dkt. 115) ("Bernard Collective Defs. Decl."); the Declaration of Thomas G. Bernard in opposition to Spring Tailor's motion for summary judgment (Dkt. 116) ("Bernard Spring Tailor Decl."); and the Collective Defendants' reply to Chen's response to the Collective Defendants' 56.1 statement (Dkt. 119) ("Ahead Car Defs. 56.1 Reply").

Citations to a party's Rule 56.1 Statement incorporate by reference the documents cited therein. Where facts stated in a party's Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts to be true.  *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

registration materials, as well as his transportation and accommodations.  *Id.* at 32–34.  During and for a few days after the convention, which took place between July 16 and 18, 2013, Chen stayed at a hotel in New Jersey.  *Id.* at 45.

On July 19, 2013, the day after the convention ended, Chen, on a tour arranged by Fumao, visited New York City.  *Id.* at 46.  After the tour, Chen was driven back by Ge to the New Jersey hotel.  Ingrao Aff., Ex. E ("Ge Dep."), at 18.  Ge drove a 2008 Toyota minivan; Chen was seated in the second row, immediately behind the front passenger seat.  Chen Dep. 52–54.

At about 5:30 p.m., a six-vehicle collision occurred in the Lincoln Tunnel, which connects New York and New Jersey.  Ahead Car Defs. 56.1, Ex. C ("Police Accident Report"), at 1.  The vehicles involved were all in the westbound lane, headed toward New Jersey.  Ahead Car Defs. 56.1, Ex. I ("Marin-Reyes Dep."), at 12.  Of the six vehicles, Ge's minivan, containing Chen, was in the rear.  Police Accident Report 2.  Although some testimony was to the effect that Chen had traveled about one mile into the tunnel, which would appear to place the accident on the New Jersey side of the 1.5-mile-long tunnel,[2] the parties all agree that the accident occurred on the New York side of the tunnel.  *See* Ahead Car Defs. Br. 1; Chen AC Br. 4.[3]

---

[2] "History," THE PORT AUTHORITY OF NEW YORK & NEW JERSEY, https://www.panynj.gov/bridges-tunnels/lincoln-tunnel-history.html (last visited June 29, 2015).

[3] In light of the parties' agreement on this point, New York law applies to Chen's tort claims. That is because (1) federal courts sitting in diversity apply the choice of law rules of the forum state, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); (2) New York applies the substantive law of the jurisdiction with the most significant interest in "'the specific issue raised in the litigation,'" *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 196 (1985) (quoting *Babcock v. Jackson*, 12 N.Y.2d 473, 481 (1963)); and (3) "the principle of *lex loci delicti*—that is, the idea that a court should apply the law of the state where the tort occurred—remains the general rule in tort cases 'to be displaced only in extraordinary circumstances,'" *Bale v. Nastasi*, 982 F. Supp. 2d 250, 255 (S.D.N.Y. 2013) (quoting *MWL Brasil Rodas & Eixos LTDA*, 661 F. Supp. 2d 419, 428 (S.D.N.Y. 2009) (quoting *Cousins v. Instrument Flyers, Inc.*, 44 N.Y.2d 698,

There is considerable dispute about how the accident came to occur.  The following facts, however, are undisputed.

*Vehicle #1*:  The first (*i.e.*, front) vehicle was a 2012 motor coach bus, driven by Brian E. Pilholski, a New York citizen, and owned by Adirondack Transit Lines, a New York company. Police Accident Report 1; Ahead Car Defs. 56.1, Ex. H ("Pilholski Dep."), at 5, 8.  Pilholski, driving in the right-hand lane, stopped without hitting the vehicle in front of him.  *Id.* at 19.

*Vehicle #2*:  The second vehicle was a black Jeep with New York license plates.  Police Accident Report 1. After striking Pilhoski's bus, the driver of that vehicle left the scene before the police arrived and was never identified.  *Id.*

*Vehicle #3*:  The third vehicle was a 2006 Chrysler Pacifica driven and owned by Rivera, a New York citizen.  Police Accident Report 3; Ahead Car Defs. 56.1, Ex. F ("Rivera Dep."), at 6, 9.

*Vehicle #4*:  The fourth vehicle, a 2012 Ford truck, was driven by Alverado, a New Jersey citizen, and owned by Domestic Linen.  Police Accident Report 3; Ahead Car Defs. 56.1, Ex. G ("Alverado Dep."), at 5, 8.

*Vehicle #5*:  The fifth vehicle was a 2004 Chevy Astro, which was driven by Marin-Reyes, a New Jersey citizen, and owned by Ballesteros, also a New Jersey citizen.  Police Accident Report 5; Marin-Reyes Dep. 7, 9; Ahead Car Defs. 56.1, Ex. J ("Ballesteros Dep."), at 6.

---

699 (1978)); *see also Katz v. Miller*, No. 13 Civ. 4445 (DLI) (CLP), 2015 WL 1469568, at *3 (E.D.N.Y. March 27, 2015) (applying New York law where accident occurred in New York); *Covey v. Simonton*, 481 F. Supp. 2d 224, 231 (E.D.N.Y. 2007) (same); *McDuffie v. Wilner*, 415 F. Supp. 2d 412, 418 (S.D.N.Y. 2006) (same); *Hong v. Maher*, No. 02 Civ. 7825 (RWS), 2004 WL 771127, at *2 n.1 (S.D.N.Y. Apr. 13, 2004) (same); *Ortiz v. Rosner*, 817 F. Supp. 348, 350 (S.D.N.Y. 1993) (same); *cf. Bale*, 982 F. Supp. 2d at 255 (applying New Jersey law where the accident occurred in New Jersey).

*Vehicle #6*:  The sixth vehicle, the Toyota minivan driven by Ge, a North Carolina citizen, was owned by Zhou, a New York citizen and friend of Ge.  Police Accident Report 5; Ge Dep. 6, 10–11.  Ge is the sole owner of Spring Tailor, a North Carolina corporation that specializes in computerized embroidery.  *Id.* at 7–9; Spring Tailor 56.1 ¶¶ 1–3.  Chen, a passenger, was asleep at the time of the accident.  Chen Dep. 57.

Chen and the Ahead Car Defendants have different accounts as to how the accident occurred.

The Ahead Car Defendants, in depositions, each attested that the first collision occurred when the sixth vehicle, Ge's Toyota Minivan, hit the rear of the fifth vehicle, which was driven by Marin-Reyes.  They testified that westbound traffic in the Lincoln Tunnel had been "bumper-to-bumper" and that vehicles had been moving at about 10 to 15 miles per hour before coming to a complete, ordinary stop before the first collision.  Rivera Dep. 33; Alverado Dep. 14–15; Marin-Reyes Dep. 13–14.  The Ahead Car Defendants testified that Ge's minivan struck the rear of the then-stationary fifth vehicle, propelling the fifth vehicle into the fourth vehicle, and the fourth vehicle into the third vehicle.  Rivera Dep. 11–12; Alverado Dep. 16, 24, 38, 42; Marin-Reyes Dep. 17, 19, 22.  Consistent with this testimony, in the police accident report,[4] Rivera, the

---

[4] All parties cite to the police accident report, which is Exhibit C to the Ahead Car Defs. 56.1 ("Police Accident Report"); no party has challenged the admissibility of any statement reported in it.  The report itself appears to be admissible under the hearsay exceptions for business records, *see* Fed. R. Evid. 803(6), or public records, *see* Fed. R. Evid. 803(8).  *See Goldstein v. Laurent*, No. 09 Civ. 2437 (PKC), 2011 WL 3586447, at *4 (S.D.N.Y. Aug. 2, 2011) (citing *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991); *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*, 605 F.2d 1228, 1251 (2d Cir. 1979)).  However, a separate question is presented by the offer of the statements made by each driver to the interviewing police officer because these statements, if offered for the truth of the matter asserted, "are hearsay within hearsay" and thus must fit within a hearsay exception or exclusion to be admissible.  *Brown v. Pagan*, No. 08 Civ. 8372 (MEA), 2010 WL 1430702, at *1 (S.D.N.Y. Apr. 8, 2010) (citing Fed. R. Evid. 805).  For purposes of this motion only, the Court assumes *arguendo* that the witnesses' statements, which appear broadly consistent with each witness's

driver of the third vehicle, is quoted as stating that his car had been pushed into the second vehicle, which, after then hitting the first vehicle, left the scene.  Police Accident Report 1.

Chen, having been asleep at the time of the collision, was not a percipient witness as to how it occurred.  Chen Dep. 57, 64.  But, drawing upon the accounts of Pilholski, the driver of the first vehicle, and Ge, the driver of the sixth, Chen argues that the accident unfolded differently, such that the series of collisions began at the front, with the second vehicle rear-ending the first, and with the vehicles behind, in succession, each striking the one in front of it after that front car stopped short or crashed.

Pilholski testified that the westbound cars were traveling at about 30 miles per hour before the accident, Pilholski Dep. 21, that the first impact in the chain of collisions came when the second vehicle collided into his, and that he next heard between one and three other impacts, *id.* at 29–30.  Ge, for his part, told the police that, before his minivan hit the car ahead, that car, the fifth vehicle, "hit his brakes hard and crashed into" the fourth vehicle.  Police Accident Report 2.  Ge testified that he was "not able to stop in time which caused him to crash into the back of" the fifth vehicle.  *Id.*  Ge, like Pilholski, testified that traffic had been moving more quickly in the tunnel than the Ahead Car Defendants recall:  Upon entering the tunnel, he testified, traffic had been "good," and he had been driving at around 35 to 40 miles per hour immediately before the crash.  Ge Dep. 19.  The van in front of him, the fifth vehicle, made a

---

later deposition testimony, would each be admissible as a prior consistent statement to rebut a charge of recent fabrication.  *See* Fed. R. Evid. 801(d)(1)(B).  To the extent that a party offers a statement made by an opponent to the police, such statements of course would be admissible under Federal Rule of Evidence 801(d)(2).  *See Goldstein*, 2011 WL 3586447, at \*4 (admitting police accident report, including statements made by plaintiff to police, under Rule 801(d)(2)); *Brown*, 2010 WL 1430702, at \*1 (same); *Thomas v. O'Brien*, Nos. 08 Civ. 3250, 08 Civ. 3448 (RLM), 2010 WL 785999, at \*5 n.4 (E.D.N.Y. Feb. 26, 2010).

short stop, and the "rear of the cargo van was pushed up and it made a big noise and smoke." *Id.* at 19–20.  Ge testified that he heard the noise and saw the smoke from the fifth vehicle before his minivan struck the fifth vehicle.  *Id.* at 21.

As to Chen's injuries, he testified that his right shoulder and forearm were fractured due to the accident, Chen Dep. 58, that he was hospitalized for three to five days in New Jersey afterwards, and that he underwent surgery, including having steel plating inserted in his arm, *id.* at 67–68.  After he returned to China, he was hospitalized for less than a month.  *Id.* at 166.  Chen further testified that he has spent between $60,000 and $70,000 on medical treatment, and that he has suffered from headaches and pain in his right shoulder.  *Id.* at 87, 89, 96.  He also testified that he can no longer carry anything in his right hand, and can no longer swim, lift weights, or drive.  *Id.* at 91–94.  Chen further testified that he has not returned to work, where he used to earn around 500,000 to 700,000 *renminbi* per year, excluding a bonus.  *Id.* at 101.[5]  He has not received any unemployment or disability compensation.  *Id.* at 103.

### B.    Procedural History

On January 10, 2014, Chen filed this lawsuit, with jurisdiction based on diversity, claiming negligence on the part of the driver of the third vehicle (Rivera); the driver (Alverado) and owner of the fourth vehicle (Domestic Linen); the driver (Marin-Reyes) and owner of the fifth vehicle (Bellestros); and the driver (Ge) and owner (Zhou) of the sixth vehicle and the driver's employer (Spring Tailor).  Dkt. 1 ("Compl.").

On July 16, 2014, Chen filed the Amended Complaint, which added a negligence claim against the driver (Pilholski) and owner (Adirondack Transit Lines) of the first vehicle.  Dkt. 44,

---

[5] By the Court's calculation, at current foreign currency exchange rates, 500,000 to 700,000 *renminbi* equates to about $80,000 to $112,000.

61 ("Amend. Compl.").  On February 23, 2015, however, Chen voluntarily dismissed with prejudice Pilholski and Adirondack Transit Lines from this action.  Dkt. 91.

On March 4, 2015, the Ahead Car Defendants jointly moved for summary judgment, arguing that Ge, as the rear-car driver, was alone liable, to the exclusion of the cars ahead, for the accident involving that car.  Dkt. 100, 102 ("Ahead Car Defs. Br.").  That same day, Spring Tailor moved for summary judgment, arguing that it was not vicariously liable for Ge's actions in connection with the accident.  Dkt. 105, 107 ("Spring Tailor Br.").  On March 10, 2015, Chen submitted a brief opposing Spring Tailor's motion, Dkt. 110 ("Chen ST Br."), and on March 13, 2015, he submitted a brief opposing the Ahead Car Defendants' motion, Dkt. 113 ("Chen AC Br.").  On March 24, 2015, Spring Tailor filed its reply.  Dkt. 118 ("Spring Tailor Reply Br.").  That same day, the Ahead Car Defendants filed their reply.  Dkt. 120 ("Ahead Car Defs. Reply Br.").

## II.   Applicable Legal Standards for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a question of material fact.  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary

judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

While summary judgment for the plaintiff is unusual in a negligence action, "the mere fact that the case involves a claim of negligence does not preclude a granting of summary judgment."  *Cumminskey v. Chandris, S.A.*, 719 F. Supp. 1183, 1186 (S.D.N.Y. 1989).  "[T]hat opposing parties assert competing versions of the same event is not in itself sufficient to preclude summary judgment," in that contradictory testimony only establishes a "genuine" issue for trial if it "lead[s] to a different legal outcome."  *Krynski v. Chase*, 707 F. Supp. 2d 318, 322 (E.D.N.Y. 2009); *see also Berk v. St. Vincent's Hosp. & Med Ctr.*, 380 F. Supp. 2d 334, 346 n.19 (S.D.N.Y. 2005).

## III.   Discussion

The Court first addresses the summary judgment motion of the Ahead Car Defendants, who argue that Ge, the sixth driver, is the sole party liable for the collision that injured Chen and that the evidence would not permit a finding that they, too, were negligent so as to proximately cause his injuries.  The Court then addresses Spring Tailor's motion, to the effect that the

evidence would not permit a finding that Ge was acting in his capacity as an employee of Spring Tailor at the time of the accident.[6]

### A.      The Ahead Car Defendants' Motion

As reviewed above, there is a basic factual disagreement among the parties as to how the six-car collision in the Lincoln Tunnel occurred.  The Ahead Car Defendants contend that the accident occurred at a time when the first five vehicles were stationary, and was precipitated by Ge's driving his minivan into the car immediately in front (the fifth vehicle, driven by Marin-Reyes), triggering a series of collisions among the cars ahead, as the force of the collision with its rear propelled each vehicle forward into the stationary car ahead of it.  Chen, however, contends that the collisions occurred in front-to-rear order, with each collision precipitated by the abrupt stop (or crash) of the car ahead of it.

The record, reviewed above, reveals a sufficient factual basis on which a jury could find either scenario.  Therefore, on the Ahead Car Defendants' motion for summary judgment, the Court must take as true the factual scenario Chen offers as to causation, and inquire whether, assuming that scenario, there is a basis on which the Ahead Car Defendants can be found liable.

Under New York law, "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."  N.Y. Vehicle & Traffic Law § 1129(a).  Based on this principle, it is well-established that "[a] rear-end collision with a stopped or stopping vehicle establishes a prima facie case of negligence on the part of the operator of the

---

[6] The Court has jurisdiction over Chen's claims because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332; *Intelligen Power Sys., LLC v. dVentus Techs. LLC*, No. 14 Civ. 7392 (PAE), 2014 WL 7176374, at *2 (S.D.N.Y. Dec. 16, 2014).

rear vehicle, thereby requiring that operator to rebut the inference of negligence by providing a nonnegligent explanation for the collision." *Whelan v. Sutherland*, No. 10761/11, 2015 WL 2457812, at *1 (2d Dep't May 27, 2015); *see also Katz v. Miller*, No. 13 Civ. 4445 (DLI) (CLP), 2015 WL 1469568, at *3 (E.D.N.Y. March 27, 2015); *Krynski*, 707 F. Supp. 2d at 322 (quoting *Hong v. Maher*, No. 02 Civ. 7825 (RWS), 2004 WL 771127, at *2 (S.D.N.Y. Apr. 13, 2004)); *Mallen v. Su*, 890 N.Y.S.2d 79, 80 (2d Dep't 2009); *Zdenek v. Safety Consultants, Inc.*, 883 N.Y.S.2d 57, 58 (2d Dep't 2009); *Leal v. Wolff*, 638 N.Y.S.2d 110, 111 (2d Dep't 1996).

The case law has identified a number of non-negligent explanations for such collisions. Such explanations "include, but are not limited to 'mechanical failure, unavoidable skidding on wet pavement, [or] a sudden stop of the vehicle ahead.'" *Polonia v. Dunphy*, No. 11 Civ. 1563 (CM), 2012 WL 2376467, at *4 (S.D.N.Y. June 21, 2012) (quoting *Power v. Hupart*, 688 N.Y.S.2d 194, 195 (2d Dep't 1999)); *see also D'Agostino v. YRC, Inc.*, 992 N.Y.S.2d 358, 359 (2d Dep't 2014) ("A nonnegligent explanation includes, but is not limited to, 'sudden or unavoidable circumstances.'") (quoting *Gambino v. City of New York*, 613 N.Y.S.2d 417, 417 (2d Dep't 1994)); *DeLouise v. S.K.I. Wholesale Beer Corp.*, 904 N.Y.S.2d 761, 762 (2d Dep't 2010).

Here, Chen contends that the sudden stops and earlier collisions of the vehicles in front of him, if credited by the jury, would supply an explanation for the chain collision under which Ge himself could be found either non-negligent or (as Chen, having sued both Ge *and* the Ahead Car Defendants, no doubt prefers) negligent but not the only collision participant whose negligence was a proximate cause of Chen's injuries. Chen AC Br. 7. Chen argues that the sudden stops and earlier collisions of the Ahead Car Defendants supply a basis under which they, too, could thus be held liable to him. *Id.* at 8. Given this theory, on their summary judgment motion, it is

the burden of the Ahead Car Defendants, to "establish[] freedom from comparative fault as a matter of law."  *Amador v. City of New York*, 991 N.Y.S.2d 637, 639 (2d Dep't 2014).

In seeking to establish their freedom from comparative fault, the Ahead Car Defendants argue that, as a matter of law, the mere short stop by a front vehicle does not qualify as a non-negligent explanation sufficient to rebut the presumption of Ge's negligence.  Ahead Car Defs. Br. 11.  The issue, however, on the Ahead Car Defendants' motion is not whether Ge may be found non-negligent:  Ge has not moved for summary judgment as to his liability to Chen; Chen takes the position that Ge is among those liable to him; and there is ample record evidence on which Ge may be found liable to Chen.  The issue on the motion is whether, on the facts of the multi-car chain-reaction collision presented here, negligence on the part of the drivers of multiple cars can be found a proximate cause of the injuries to a rear-car passenger.  Can the Ahead Car Defendants—drivers whose short stops and/or earlier collisions, on one view of the facts, may be found to have precipitated a rear car's collision—also be held liable to a passenger in the rear-car, such that multiple tortfeasors may be found in this action?

In *Tutrani v. County of Suffolk*, 10 N.Y.3d 906 (2008), the New York Court of Appeals answered this question in the affirmative.  *Tutrani* involved a three-car collision in which the lead driver had "abruptly" decelerated from 40 miles per hour to one or two miles per hour while changing lanes.  *Id.* at 907.  The plaintiff, the driver of the middle car, slammed on her brakes and was able to stop without striking the lead vehicle.  *Id.*  Seconds later, the last vehicle collided with the plaintiff's vehicle.  *Id.*  At trial, the jury found that the drivers of the first and last vehicle were both negligent.  *Id.*  The Appellate Division overturned the verdict, finding that, as a matter of law, the first driver's conduct was "not a proximate cause of the accident because 'plaintiff was able to come to a complete stop without hitting [the lead driver's] vehicle.'"  *Id.*

12

However, the Court of Appeals reversed.  It held that "the jury could have rationally found . . . that [the lead driver's] conduct 'set into motion an eminently foreseeable chain of events that resulted in [the] collision' between the vehicles driven by plaintiff and [the rear-end driver]." *Id.* In other words, the Court of Appeals stated, the lead driver's abrupt deceleration "created a foreseeable danger that vehicles would have to brake aggressively in an effort to avoid the lane obstruction created by his vehicle, thereby increasing the risk of rear-end collisions. . . .  That a negligent driver may be unable to stop his or her vehicle in time to avoid a collision with a stopped vehicle is 'a normal or foreseeable consequence of the situation created by' [the lead driver's] actions." *Id.* at 908 (citation omitted).

Indeed, in an earlier case, *Lenahan v. Goucher*, 65 N.Y.2d 1034 (1985), the Court of Appeals had already held that a lead vehicle could be found partially liable for a rear-end collision.  In that case, the jury found that the defendant, the rear-car driver, had been 65% responsible for a rear-end collision, while the plaintiff had been found 35% responsible because she had "needlessly come to a sudden stop without warning." *Lenahan v. Goucher*, 489 N.Y.S.2d 418, 419–20 (3d Dep't 1985).  The Appellate Division, Third Department, affirmed the trial judge's decision to vacate the portion of the jury's verdict holding the plaintiff partially responsible; Justice Yesawich dissented, finding that, in light of the defendant's testimony that the plaintiff had stopped short, a jury could have properly found the plaintiff partially responsible for the rear-end collision. *Id.*  The Court of Appeals reversed and reinstated the jury's verdict "for the reasons stated in the dissenting memorandum of Justice . . . Yesawich." *Lenahan*, 65 N.Y.2d at 1034.

The Court also finds instructive Judge Glasser's decision in *Maizous v. Garraffa*, No. 00 Civ. 4895 (ILG), 2002 WL 1471556 (E.D.N.Y. Apr. 30, 2002).   In that case, four cars were

involved in a chain collision, similar to the one in this case, on the Verrazano Narrows Bridge. *Id.* at *1.  The driver of the third vehicle testified that he came to a short stop and thereafter, the fourth driver hit the third vehicle.  *Id.* at *1–2.  The driver and owner of the third vehicle thereafter moved for summary judgment, arguing that stopping short alone is insufficient to be found comparatively negligent.  *Id.* at *2.  However, in canvassing an extensive body of cases as to whether a short stop by a front car rebuts the prima facie case of negligence in rear-end collision cases, Judge Glasser noted that many New York courts, including the Appellate Division, Second Department, had held that "when a lead vehicle stops short, the driver of that vehicle may be held negligent."  *Id.* at *4.  And, relying on the Court of Appeals' decision in *Lenahan*, as well as his extensive survey of New York court cases, Judge Glasser held that "it is fair to infer that the lead driver in a rear-end collision may be held comparatively negligent if the driver stopped short or came to a sudden stop."  *Id.* at *5.

Subsequent Appellate Division decisions have reinforced that an abrupt stop by a front car, in a chain-reaction collision, can support a finding of (at least) comparative fault on the part of the driver to a passenger (or driver) behind.  For example, in *Napolitano v. Galletta*, the plaintiff was a passenger in a car that was rear-ended by the defendant driver in a four-vehicle chain collision.  925 N.Y.S.2d 163 (2d Dep't 2011).  The Appellate Division, Second Department held that although the car the plaintiff had been in was stopped or stopping when it was struck in the rear by the defendant's vehicle, the defendant had articulated a non-negligent explanation for the collision by coming forward with evidence that plaintiff's vehicle had stopped short and collided with the rear of a truck directly in front of it.  *Id.* at 164.  Thus, the Appellate Division held, the actions of the driver of the vehicle ahead could be found to have "caused or contributed" to the collision.  *Id.*; *see also, e.g.*, *Hudgins-Russell v. Sharma*, 983

N.Y.S.2d 879, 879 (2d Dep't 2014) (affirming denial of lead driver's motion for summary judgment where lead driver came to a sudden stop before the collision); *Markesinis v. Jaquez*, 965 N.Y.S.2d 363, 363–364 (2d Dep't 2013) (affirming denial of motion for summary judgment against rear-car driver where plaintiff, who drove lead vehicle, made a sudden stop); *Kertesz v. Jason Transp. Corp.*, 957 N.Y.S.2d 730, 732 (2d Dep't 2013) (reversing grant of front-car plaintiff's motion for summary judgment where plaintiff had "stopped suddenly," and thus could be found to have "negligently caused or contributed to the accident"); *Berger v. N.Y.C. Hous. Auth.*, 918 N.Y.S.2d 458, 459 (1st Dep't 2011) (stating that "[i]t is well established that evidence of a rear-end collision with a stopped vehicle constitutes a prima facie case of negligence on the part of the operator of the moving vehicle, *which may be rebutted by evidence that the vehicle in front stopped suddenly*," and holding that the lower court "properly determined that issues of fact exist[ed] concerning whether the first three vehicles in this five-car accident . . . stopped suddenly and their reasons for doing so") (emphasis added); *Gleason v. Villegas*, 917 N.Y.S.2d 890, 891 (2d Dep't 2011) (reversing grant of summary judgment to lead-car driver-plaintiff where plaintiff may have "contributed to the accident by making a sudden stop"); *Aguilar v. Alonzo*, 888 N.Y.S.2d 545, 546–47 (2d Dep't 2009) (reversing grant of summary judgment and finding that driver of first car in a three-car chain collision could be found comparatively negligent where first car made a sudden stop).

Notwithstanding this analysis, the Ahead Car Defendants contend that a later decision of the Appellate Division, First Department, *Cabrera v. Rodriguez*, 900 N.Y.S.2d 29 (1st Dep't 2010), casts doubt on Judge Glasser's reasoning in *Maizous*. They contend that *Cabrera* establishes that the driver of a front car cannot be held comparatively negligent for a short stop in a chain-collision case brought by a passenger in a rear car who collided with the front car. *See*

Ahead Car Defs. Reply Br. 1.  At issue in *Cabrera* was a claim brought by a front-car driver against a rear-car driver who had collided with the front car after the front car had stopped.  On the front-car driver's motion for summary judgment, the Appellate Division indeed recognized that the fact of a rear-end collision with a stopped car "imposes a duty on the part of the operator of the moving vehicle to come forward with an adequate non-negligent explanation for the accident," and stated that, alone, the rear-car driver's claim that the front-car driver had come to a sudden stop did not itself automatically rebut the presumption of the rear-car driver's negligence.  *Id.* at 30–31.  But *Cabrera* does not carry the day here.  Although reiterating the principle that a rear-car driver cannot escape liability merely by pointing to the sudden stop of the car ahead,[7] *Cabrera* also recognized the possibility that other forms of abrupt behavior by the front car might change the analysis.  It noted, for example, that there had been no claim by the rear-end driver that, immediately before the stop, "plaintiff had suddenly moved into defendant's lane."  *Id.* at 31.  And *Cabrera* did not address the issue, present in *Maizous* and this case, of the allocation of responsibility in a multi-car chain reaction collision.[8]  It did not speak to whether,

---

[7] The cases on which *Cabrera* relied were ones in which the liability of the rear-car driver was apparent.  *See, e.g.*, *Francisco v. Schoepfer*, 817 N.Y.S.2d 52, 53 (1st Dep't 2006) (ahead vehicle was "fully stopped in the far right lane of the toll plaza"); *Farrington v. N.Y.C. Transit Auth.*, 822 N.Y.S.2d 51, 52 (1st Dep't 2006) (defendant rear-end vehicle driver "saw the [ahead] vehicle three to four seconds before impact, as he was approaching a clearly visible, bottle-necked construction area"); *Mullen v. Rigor*, 778 N.Y.S.2d 168, 169 (1st Dep't 2004) (ahead vehicle "was stopped when the accident occurred" and there was no testimony from plaintiff or defendant, the driver of the rear-end vehicle, "as to why a safe distance between the two vehicles could not have been maintained"); *Agramonte v. City of New York*, 732 N.Y.S.2d 414, 415 (1st Dep't 2001) (defendant driver collided with car ahead because he was "momentarily blinded by the sun," and traffic was "heavy").

[8] One case that *Cabrera* cites, *Francisco*, does involve a multi-car collision—a four-vehicle accident.  In that case, the driver of the third vehicle moved for summary judgment on the basis that "[t]here [was] nothing in the record to contradict [his] claim that his vehicle was *fully stopped* . . . when [his] vehicle was struck from behind" and that the force of that impact pushed his car into the second car, which then struck the first vehicle.  817 N.Y.S.2d at 53 (emphasis

in that circumstance, even if the rear-car driver is liable to its passenger, front-car drivers too may be held comparatively negligent.

The recent decision of the Appellate Division, First Department, in *Passos v. MTA Bus Company*, 2015 WL 3618602 (1st Dep't June 11, 2015), reinforces the conclusion that liability may be shared by a front car driver in a chain collision.  In *Passos*, the driver of the front vehicle in a three-car collision testified that he felt two impacts; on that basis, the Appellate Division concluded, the second driver could have first hit the first car before being hit by the rear-end vehicle.  *Id.* at *1.  The Appellate Division held that, in such a "multi vehicle accident, 'where, as here, there is a question of fact as to the sequence of the collisions,' it cannot be said as a matter of law there was only one proximate cause of plaintiffs' injuries."  *Id.* (citing *Vavoulis v. Adler*, 842 N.Y.S.2d 526, 527 (2d Dep't 2007)).  Accordingly, the Appellate Division held, a jury could find that either (1) the collision between the first and second vehicles "created a foreseeable danger that the [rear-vehicle driver] would also have to brake aggressively, increasing the risk of a second rear end collision" or (2) the rear-vehicle driver was solely liable for the accident.  *Id.* The Court has found other recent decisions in accord.  *See, e.g.*, *Goldstein v. Laurent*, No. 09 Civ. 2437 (PKC), 2011 WL 3586447, at *3 (S.D.N.Y. Aug. 2, 2011) (finding genuine issue of material fact as to plaintiff's comparative negligence where a reasonable jury could conclude for defendants as to sequence of collisions (citing *Napolitano*, 925 N.Y.S.2d at 164 (finding issue of fact as to comparative negligence where plaintiff's vehicle "stopped short and collided with the rear truck directly in front of it" before being hit from behind))); *Whelan*, 2015 WL 2457812, at

---

added).  The Appellate Division, First Department reversed the Supreme Court's denial of the third-car driver's motion for summary judgment.  *Id.*  However, the plaintiff's claims against the driver of the second car and the last car remained intact, implying that drivers of cars ahead of the rear-end vehicle may be held comparatively negligent.

*1 (reversing grant of summary judgment where plaintiff and defendant in a three-car chain collision disputed sequence and number of collisions); *cf. Larmore v. Panapoulos*, 994 N.Y.S.2d 640, 641 (2d Dep't 2014) (dismissing claim against defendant where evidence showed he had been lawfully stopped behind the plaintiff's vehicle when the defendant's vehicle was struck by another vehicle and where neither the plaintiff nor the other co-defendants "raised a triable issue of fact as to whether [this] defendant caused or contributed to the collision between the vehicles of the plaintiff and the defendant"); *Ferguson v. Honda Lease Trust*, 826 N.Y.S.2d 10, 11 (1st Dep't 2006) (dismissing claims against the drivers of first two cars in a five-car chain collision, wherein plaintiff's "speculation that [those] vehicles could have been moving or perhaps had stopped suddenly are unsupported by any evidence").

In this case, as noted, the chain collision involved six vehicles, and there are competing theories as to how the accident unfolded. Chen's theory, which has a basis in the evidence, is that the chain collision began with the first two cars and, as a result of a series of sudden stops and collisions, led to the subsequent six-car pileup. Pilholski, the first driver, testified that before his sudden stop, he and the cars around him were driving at 30 miles per hour, and that after he stopped short, he felt the collision between his bus and the second vehicle, and heard other collisions behind him. Pilholski Dep. 21, 27–30. Marin-Reyes, the fifth driver, testified that the fourth vehicle, which he hit, had been moving immediately beforehand, and that he began to brake when he "saw that the [fourth car's] brake lights were on." Marin-Reyes Dep. 29. And, Ge, the sixth driver, testified that before he crashed into the fifth vehicle, he had seen "big noise and smoke" coming from that vehicle. Ge Dep. 19–20.

There is thus in this case, as in *Passos*, a question of fact as to the sequence of collisions. Although the Ahead Car Defendants contend that the accident unfolded differently,[9] that is a question of fact for the jury to decide, based on the evidence at trial.  And as in *Passos*, *Maizous*, and the other cases cited above involving multi-car collisions, it would not be proper for this Court to determine, at summary judgment, that the rear-car's negligence alone caused that car's collision, such that "there was only one proximate cause of plaintiff['s] injuries."  *Passos*, 2015 WL 3618602, at *1 (citing *Vavoulis*, 842 N.Y.S.2d at 527).  The identification of the tortfeasors, and the determination and allocation of legal responsibility for Chen's injuries, must await trial.

Accordingly, having carefully considered the evidence in the light most favorable to Chen, the Court holds that summary judgment cannot be granted to the Ahead Car Defendants. The jury will decide how the multi-car accident here occurred, and whether the defendants associated with the three vehicles immediately in front of the rear car shared in liability to Chen. The Court, therefore, denies the Ahead Car Defendants' motion for summary judgment.

---

[9] Although the Ahead Car Defendants, in their brief, present a uniform account of the accident, there appear to be variations among the testimony of the drivers (Rivera, Alverado, and Marin-Reyes) of these three cars.  First, only two of the three testified that the third through fifth vehicles came to full, normal stops.  Rivera, the third driver, and Alverado, the fourth, testified that they came to such stops, Rivera Dep. 11–12; Alverado Dep. 16, but Marin-Reyes, the fifth driver, testified that the fourth vehicle, driven by Alverado, "did not stop because the traffic was going," Marin-Reyes Dep. 20.  He testified that the fourth vehicle "was not stopped.  I saw that the brake lights were on and that is when I started to brake."  *Id.* at 29.  Second, both Rivera and Alverado testified that they heard two "bangs," and were hit after the second.  Rivera Dep. 11; Alverado Dep. 19, 24.  This testimony may be taken to suggest that both Rivera and Alverado were struck in the second of the chain of collisions, despite being drivers of different cars.

B.      **Spring Tailor's Motion**

The Court turns next to Spring Tailor's motion for summary judgment.  It argues that it cannot be held vicariously liable because under no view of the facts was Ge acting within the scope of his employment at Spring Tailor when he drove Chen on July 19, 2013.

In New York, "[a]n employer is . . . vicariously liable under the doctrine of respondeat superior for injuries resulting from the negligence of employees acting within the scope of their employment." *McDuffie v. Wilner*, 415 F. Supp. 2d 412, 419 (S.D.N.Y. 2006) (citing *Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933 (1999); *Lundberg v. State*, 25 N.Y.2d 467, 470 (1969)).  "Employer responsibility is broad, 'particularly where employee activity may be regarded as *incidental to the furtherance of the employer's interest*.'" *Davis v. Larhette*, 834 N.Y.S.2d 280, 280 (2d Dep't 2007) (quoting *Makoske v. Lombardy*, 366 N.Y.S.2d 475, 475 (3d Dep't 1975), *aff'd* 39 N.Y.2d 773 (1976)) (emphasis in *Makoske*); *see also Oliva v. City of New York*, 748 N.Y.S.2d 164, 166 (2d Dep't 2002).  "Although whether an employee was acting in the scope of his employment is ordinarily a question for the jury where the evidence is conflicting, the question becomes one for the court to resolve where there is no conflict as to the essential facts." *Dinkins v. Farley*, 434 N.Y.S.2d 325, 327 (N.Y. Sup. Ct. 1980) (citing *Riley v. Standard Oil Co.*, 231 N.Y. 301 (1921); *Kelleher v. State Mut. Life Assur. Co. of Am.*, 380 N.Y.S.2d 146 (4th Dep't 1976)).

In assessing whether Ge's driving of Chen could be held "within the scope of [Ge's] employment, the crucial test is whether the employment created the necessity for travel. . . .  If the travel would still have occurred even though the business purpose was cancelled, then the employer cannot be held liable." *Kelleher*, 380 N.Y.S.2d at 148 (citing *Matter of Marks v. Gray*, 251 N.Y. 90 (1929); *Rappaport v. Int'l Playtex Corp.*, 352 N.Y.S.2d 241 (3d Dep't 1974)); *see*

*also Berger v. Burlin & Jones, Inc.*, 349 N.Y.S.2d 1, 3 (1st Dep't 1973), *aff'd*, 34 N.Y.2d 896 (1974).

The facts relevant to this issue are these. Spring Tailor is a North Carolina corporation, owned by Ge, which specializes in computerized embroidery. Ge Dep. 7–8. Ge traveled from North Carolina to New York, he testified, after he received a call from a friend named Tony in China. *Id.* at 14. During the phone call:

> Tony . . . told me that he had several friends who was his client. They came to New York, and asked me whether I was available, because I also engaged in business. He said that there was a show of embroidery and asked me whether I was interested in. It's a show of textile. I said yes, and he said that if you okay, he could provide lodging, and told me to borrow a car to help him.

*Id.* at 14–15. Chen, and presumably Tony's other clients, had paid about 40,000 to 50,000 *renminbi*[10] for their trip to New York, which included the arrangement of their textile convention materials, transportation, accommodations, and a tour of New York (together, the "convention package"). Chen Dep. 32–34; 46–47.

In New York, Ge, driving his friend Zhou's Toyota minivan, took Chen and Tony's other clients to the textile convention at least once or twice, and also attended the convention one day himself, speaking to exhibitors to, in Ge's words, "find some new opportunities" for his embroidery business, and also "with the intention of starting a new business." Ge Dep. at 11, 53, 56, 58–59.[11] Although Ge himself did not have a ticket to the convention, he borrowed tickets

---

[10] By the Court's calculation, at current foreign currency exchange rates, 40,000 to 50,000 *renminbi* equates to about $6,400 to $8,000.

[11] Specifically, Ge testified:

> Q.    You said you wanted to find new opportunities for your business. What was the name of that business?
> A.    I engage in embroidery business. Sometimes I import the clothes. This is a textile exhibition show, business show. I just want to take a look because I have friends in China who engage in business of textile and embroidery. The products

from Tony's clients in order to attend. *Id.* at 54. During his time in New York, Ge stayed at the

same hotel as Tony's clients, and did not pay for his hotel room. *Id.* at 16–17. On July 19, 2013,

the day of the accident, and a day after the convention ended, Ge drove Tony's clients, including

Chen, to New York for a tour of the city, which was part of the convention package for which

Tony's clients had paid. *Id.* at 17–18; Chen Ge Dep. 46–47.

Chen argues that these facts support that Ge was acting within the scope of his work for

Spring Tailor when Ge drove Chen on July 19, 2013. Chen ST Br. 4. Among other things, Chen

notes, Ge and he were brought together, and Ge took on the role of driving Chen and others, in

connection with a textile convention, a subject relevant to Spring Tailor's work in computerized

embroidery. Chen argues that Ge's statement that he was pursuing "new opportunities" for his

embroidery business supports a finding that his activities in New York derived from his work for

Spring Tailor.

Spring Tailor, however, seizes on other aspects of Ge's account to argue that his actions

in New York in July 2013 were not connected to Spring Tailor. Spring Tailor Br. 4. It notes

Ge's testimony that he would not have gone on the trip to New York for his own business, and

that he was primarily motivated to travel to New York and to drive Tony's clients because of his

friendship with Tony. Ge Dep. 55.[12] As Spring Tailor further notes, Ge also testified that he

---

      was majority clothing for funitures [sic]. So in North Carolina, I also sometimes
      do. There was also a textile in High Point, so I just want to take a look and seek
      for more opportunities.

Ge Dep. 56–57.

[12] Specifically, during Ge's deposition, he testified:

      Q.     And you gave up four days, approximately, of your life in North Carolina
      to come to New York to drive four strangers around for four days because your
      friend asked you?

was not paid for driving Tony's clients, and that he paid for the gas and was not reimbursed. *Id.* at 17. These facts, Spring Tailor argues, support a finding that Ge's actions in New York were unrelated to it.

In so arguing, Spring Tailor likens this case to *Felberbaum v. Weinberger*, 863 N.Y.S.2d 747 (2d Dep't 2008). *See* Spring Tailor Br. 8; Spring Tailor Reply Br. 4–5. There, the defendant, an employee of an ice cream vendor, had rented, under his name, a vehicle to attend a family wedding in Brooklyn. *Felberbaum*, 863 N.Y.S.2d. at 749. After the wedding, the defendant drove to Canada and was involved in a car accident. *Id.* The defendant testified that when he came to New York for the wedding, he had brought his company's ice cream samples, which he had left with a cousin. *Id.* But, he testified, he had not planned on conducting business while he was in New York for the wedding, and the samples he had left with the cousin related to a subsequent business trip. *Id.* The defendant's employer, the ice cream vendor, moved for summary judgment, asserting it was not vicariously liable for the defendant, whose negligence had caused the car accident. *Id.* On these facts, the Appellate Division, Second Department held that the defendant's employer was not liable, because the defendant's travel had been motivated by a personal reason (to attend the wedding), and he would have made the trip with or without the company's ice cream samples. *Id.* Spring Tailor argues that this case is analogous, because Ge testified that he drove Tony's clients around New York City as a favor for Tony and as part of a vacation for himself. Spring Tailor Br. 8–9.

---

  A.  Yes. For myself, I also came over here to have a visit. Just like to spend holiday, vacation.

Ge Dep. 55.

However, the facts of this case are readily distinguishable from those in *Felberbaum*. Most importantly, Ge testified to multiple motives for going to New York. Although some of these were unrelated to Spring Tailor, Ge also testified that the visit to the textile convention in New York related to his embroidery business, Spring Tailor. A jury could credit that testimony. And, because Ge owns Spring Tailor and presumably has an interest in shielding it from tort liability to Chen, a jury could discredit, or place limited weight, on Ge's testimony as to non-business reasons for his travel. Furthermore, unlike the ice cream company employee in *Felberbaum*, Ge did engage in activities while in New York that a jury could find related to the business of the defendant company: He testified that he attended the textile convention in search of new business prospects. *Id.* at 6.[13]

In light of Ge's conflicting testimony and the competing inferences that can be drawn from it, and because there is a sufficient basis on which a jury can find that Ge was engaged in activity "incidental to the furtherance of [Spring Tailor's] interest," the Court denies Spring Tailor's motion for summary judgment. *Davis*, 834 N.Y.S.2d at 280 (quoting *Makoske*, 366 N.Y.S.2d at 475). The jury will be called upon to resolve the factual dispute, and thereby decide,

---

[13] In opposing Spring Tailor's motion for summary judgment, Chen urges the Court to consider screenshots of three cell phone text messages, written in Chinese and translated into English. Chen Resp. Spring Tailor 56.1, Ex. D, at 3. He asserts that these text messages were sent to him while he was in China, before he arrived in New York. He further asserts that they support that Chen was acting in connection with Spring Tailor, insofar as they identify "the local travel agent in New York" as "Spring Tailar [sic], LLC" and the contact person there as Ge. *Id.* at 1; Chen Dep. 39, 41. Defendants argue that these messages are inadmissible, including because they were never properly authenticated. Because their admissibility is disputed and because the other evidence cited above supplies a sufficient basis to sustain Chen's claim against Spring Tailor, the Court did not consider these messages in this ruling denying Spring Tailor's motion for summary judgment. In the event that Chen identifies these cell messages as evidence that he intends to offer at trial, Spring Tailor will be at liberty to move, *in limine*, to preclude such evidence.

assuming Ge is found liable, whether Spring Tailor is vicariously liable for his negligence in connection with the car accident.

## CONCLUSION

For the reasons set forth above, the Court denies the Ahead Car Defendants' and Spring Tailor's motions for summary judgment.  The Clerk is directed to terminate the motions pending at docket numbers 100 and 105.

This case will now proceed to a jury trial.  The Court schedules a pretrial conference for July 29, 2015, at 10 a.m.  At that conference, the Court will set a trial date and deadlines for the parties' pretrial submissions.  *See* http://www.nysd.uscourts.gov/judge/Engelmayer.  Counsel are advised that trial likely will be held in September 2015.  Counsel should be prepared to state, at the conference, their best estimates as to the length of the trial.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: June 29, 2015
       New York, New York